UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PERIOPERATIVE SERVICES AND LOGISTICS, LLC, ) ) ) ) Plaintiff, ) ) v. ) ) U.S. DEPARTMENT OF ) VETERANS AFFAIRS, ) ) Defendant. ) ) | Civil Action No. 20-0095 (ABJ) |

**MEMORANDUM OPINION**

Plaintiff Perioperative Services and Logistics, LLC brought this action on January 14, 2021 under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, seeking to compel defendant, the U.S. Department of Veterans Affairs ("VA"), to release certain records. *See* Compl. [Dkt. # 1] ¶ 7. Pending before the Court is defendant's motion for summary judgment. Def.'s Mem. in Supp. of Mot. for Summ. J. [Dkt. # 11-1] ("Mot."); *see also* Def.'s Statement of Undisputed Material Facts [Dkt. # 11-2] ("SOF"). The motion is supported by a declaration detailing the content of the responsive materials and the justification for the agency's invocation of FOIA Exemption 6 to withhold them in full. *See* Decl. of Brian P. Tierney [Dkt. # 20] (*ex parte*) (SEALED) ("Tierney Decl."). The Court authorized the filing of the declaration under seal and *ex parte* based on the government's representation that the document also implicated the privacy concerns animating defendant's decision to withhold the records. *See* Min. Order (Sept. 15, 2021). Plaintiff opposes the motion for summary judgment, and it seeks reconsideration of the decision to allow the declaration to be submitted under seal and *ex parte*. *See* Pl.'s Mot. for Recons. of

1

Order Sealing Tierney Decl. [Dkt. # 13] ("Pl.'s Mot."); Ex. 1 to Pl.'s Mot, Mem. of P. & A. in Opp. to Mot. and in Supp. of Pl.'s Mot. [Dkt. # 13-1] ("Opp."); *see also* Ex. 2 to Pl.'s Mot., Pl.'s Statement of Disputed Facts [Dkt. # 13-2] ("Pl.'s Disputed SOF"). Because the Court concludes, based on its consideration of the entire record, including the *ex parte* declaration, that the responsive records were properly withheld under FOIA Exemption 6, defendant's motion will be **GRANTED**, and the motion for reconsideration will be **DENIED**.

## BACKGROUND

Plaintiff is a provider of medical implant materials and other medical devices and supplies to customers, including defendant. Compl. ¶ 5. In late 2018, a third party submitted a complaint to defendant regarding plaintiff's business practices. Compl. ¶ 6.

Plaintiff submitted a FOIA request on February 6, 2019, asking for:

> [A] copy of the e-mail document from the unaffiliated implant center that contains the claimant's statement, to include the name of the claimant's organization and associated parties identified in the email . . . any further communication that was had with the unaffiliated implant center, if written communication, via email was not the form of communication . . . a summary of conversations with the unaffiliated implant center, [which] should include, [the] name of the organizations, name of parties from the claimant and the [VA], date, time and any specific details concerning Perioperative Services and Logistics.

Pl.'s FOIA Request, Ex. 1 to Compl. [Dkt. # 1-1] ("FOIA Request"); Compl. ¶ 7; SOF ¶¶ 4–5.

In response, defendant informed plaintiff that its search for responsive material produced two pages of records, but that they would be withheld in full pursuant to FOIA Exemption 5, 5 U.S.C. § 552(b)(5), because "attorney-client privilege ha[s] been incorporated into [Exemption 5]," which "applies to both factual and deliberative materials." *See* Letter from M. Reneé, VA OGC FOIA Officer, to Shawn Martin, President of Perioperative Service and Logistics LLC (Mar.

4, 2019), Ex. 2 to Compl. [Dkt. # 1-2] ("FOIA Denial Letter"); Compl. ¶ 8; SOF ¶¶ 7–8. Plaintiff filed an administrative appeal on June 18, 2019. Ex. 3 to Compl. [Dkt. # 1-3]; Compl. ¶ 9.

Defendant responded to plaintiff's appeal on November 14, 2019, affirming that the two pages of responsive records were exempt from release. SOF ¶ 12. However, the agency no longer relied on the attorney-client privilege under Exemption 5,[1] but it asserted instead that the documents fell under Exemption 6, 5 U.S.C. § 552(b)(6), because "the disclosure of certain information would constitute a clearly unwarranted invasion of a living individual's personal privacy without contributing significantly to the public's understanding of the activities of the Federal Government." Ex. 5 to Compl. [Dkt. # 1-5] ("VA Appeal Letter") at 2.

## LEGAL STANDARD

In a FOIA case, the district court reviews the agency's decisions de novo, 5 U.S.C. § 552(a)(4)(B), and "the burden is on the agency to sustain its action." *Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). "[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v.*

---

1   At the time, the agency also asserted the deliberative process privilege under Exemption 5, SOF ¶ 18, but the agency does not rely on that theory in this litigation.

*Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted).

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). In the FOIA context, "the sufficiency of the agency's identification or retrieval procedure" must be "genuinely in issue" in order for summary judgment to be inappropriate. *Weisberg v. DOJ*, 627 F.2d 365, 371 n.54 (D.C. Cir. 1980), quoting *Founding Church of Scientology v. NSA*, 610 F.2d 824, 836 (D.C. Cir. 1979) (internal quotation marks omitted).

"[S]ummary judgment may be granted on the basis of agency affidavits" in FOIA cases, when those affidavits "contain reasonable specificity of detail rather than merely conclusory statements," and when "they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Jud. Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013), quoting *Consumer Fed'n of Am. v. Dep't of Agric.*, 455 F.3d 283, 287 (D.C. Cir. 2006); *see also Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009) ("[i]n a suit seeking agency documents – whether under the Privacy Act or FOIA – '[a]t the summary judgment stage . . . the court may rely on a reasonably detailed affidavit'"). A plaintiff cannot rebut the good faith presumption afforded to an agency's supporting affidavits through "purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc. v. SEC*, 926

F.2d 1197, 1200 (D.C. Cir. 1991), quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981).

## ANALYSIS

FOIA generally requires federal agencies to disclose their records upon request. *See* 5 U.S.C. § 552(a)(3)(A). The only exception is for records that fall into one, or more, of the nine narrowly construed exemptions. *See id.* § 552(b); *see also FBI v. Abramson*, 456 U.S. 615, 630 (1982). When withholding records under FOIA, an agency must demonstrate that it has made "a good faith effort to conduct a search for the requested records," *see Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990), and that "materials that are withheld . . . fall within a FOIA statutory exemption." *Leadership Conf. on Civ. Rights v. Gonzales*, 404 F. Supp. 2d 246, 252 (D.D.C. 2005), citing *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).

"[W]hen an agency seeks to withhold information, it must provide a relatively detailed justification" for the withholding, *Morley v. CIA*, 508 F.3d 1108, 1122 (D.C. Cir. 2007), quoting *King v. U.S. Dep't of Just.*, 830 F.2d 210, 219 (D.C. Cir. 1987) (internal quotation marks omitted), through a *Vaughn* index, an affidavit, or by other means. *See Gallant v. NLRB*, 26 F.3d 168, 172–73 (D.C. Cir. 1994), citing *Vaughn v. United States*, 936 F.2d 862, 867 (6th Cir. 1991). The general rule in FOIA cases is that:

> If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone.

*ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011) (citations omitted).

After asserting and explaining the use of particular exemptions, an agency must release "[a]ny reasonably segregable portion of a record," 5 U.S.C. § 552(b), unless the non-exempt portions are "inextricably intertwined with exempt portions" of the record. *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002), quoting 5 U.S.C. § 552(b) and *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). "In order to demonstrate that all reasonably segregable material has been released, the agency must provide a 'detailed justification' for its non-segregability," although "the agency is not required to provide so much detail that the exempt material would be effectively be disclosed." *Johnson*, 310 F.3d at 776, citing *Mead Data Cent.*, 566 F.2d at 261.

### I. The withholding of responsive records was justified under FOIA Exemption 6.

Exemption 6 allows agencies to withhold "personnel and medical files and similar files"[2] when disclosure "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The purpose of Exemption 6 is "to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 599 (1982). "The Supreme Court has made clear that Exemption 6 is designed to protect personal information in public records, even if it is not embarrassing or of an intimate nature." *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989).

To determine whether disclosure would constitute a clearly unwarranted invasion of personal privacy, courts employ a two-step test. First: would disclosure "compromise a substantial, as opposed to a *de minimis*, privacy interest?" *Nat'l Ass'n of Home Builders v. Norton*,

---

2   There does not appear to be a dispute that the withheld files are "similar files" that meet the threshold requirement of Exemption 6.

309 F.3d 26, 33 (D.C. Cir. 2002) (internal quotation marks omitted), quoting *Horner*, 879 F.2d at 874. Second: if so, "the court then must weigh that interest against the public interest in the release of the records in order to determine whether, on balance, disclosure would [cause] a clearly unwarranted invasion of personal privacy." *Id.* (internal quotation marks omitted). "[T]he only relevant 'public interest in disclosure' to be weighed in this balance is the extent to which disclosure would serve the 'core purpose of the FOIA,' which is 'contributing significantly to public understanding of the operations or activities of the government.'" *Am. Immigr. Laws. Ass'n v. Exec. Off. for Immigr. Rev.*, 830 F.3d 667, 674 (D.C. Cir. 2016), quoting *U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 495 (1994).

### A. A substantial privacy interest exists.

The privacy interest here is clear; plaintiff specifically asked to be informed of the identity of the third party that filed a complaint with a federal agency. Other courts in this district have held that these complainants have a substantial privacy interest in their identity. *See, e.g.*, *Wisdom v. U.S. Tr. Program*, 232 F. Supp. 3d 97, 123 (D.D.C. 2017) (finding a privacy interest in "the names of individuals who complained to the agency"). This can be true "even where such identifying information is otherwise available in public records," *id.*, citing *Am. Immigr. Laws.*, 830 F.3d at 674, and it is certainly true in this instance, where the complainant has never been publicly identified, and the plaintiff has been vociferous about its interest in "unmasking" the source of the complaint. *See* Opp. at 3 ("To be clear, Plaintiff seeks to unmask the identity of the false complainant and the precise nature of the false complaint.").

### B. The privacy interest outweighs the public interest asserted by plaintiff.

So how does this privacy interest weigh against the public interest asserted by plaintiff? The only relevant public interest under Exemption 6 is the extent to which disclosure would

7

"contribut[e] significantly to public understanding of the operations or activities of the government." *Am. Immigr. Laws.*, 830 F.3d at 674 (citation omitted). The purpose of the Freedom of Information Act is to enable the public "to be informed about what their government is up to," *Roth v. DOJ*, 642 F.3d 1161, 1177 (D.C. Cir. 2011) (citation and internal quotation marks omitted), and its objectives are "not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct." *DOJ v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 773 (1989). So while plaintiff may be sincere in its assertions that it has been irreparably harmed, *see* Compl. ¶ 14, its complaints about the economic impact of the investigation on it, *see* Opp. at 8, do not factor into the balancing.

      Plaintiff assumes that the complainant is a competing firm, and it argues that this raises "important questions regarding Defendant's investigatory procedures." Opp. at 3. It adds that the identifying information would be a boon to the public because it "is part of an inquiry concerning whether a competitor can abuse the VA's investigatory processes by filing a false complaint for the purposes of causing harm to a competitor." *Id.*; see also *id.* at 9 ("[K]nowledge of even just the name of the competitor that filed this third party complaint would help understand how the agency weighs complaints and determines the parameters of any investigation."). But this is pure speculation that has no particular logic behind it. Even if the Court accepts plaintiff's accusations about the veracity of the third party complaint, the release of the complainant's identity would not lead to a greater public understanding of the agency's decision-making processes.

      Moreover, even if one could posit the existence of some lesson to be learned from the disclosure of the relationship, if any, of the complainant to the plaintiff, that limited value is insufficient to overcome the privacy interests of third party complainants who submit their

concerns to the government.  *See, e.g.*, *Edelman v. SEC*, 302 F. Supp. 3d 421, 426 (D.D.C. 2018) ("[D]isclosing the identities of the thirty-six complainants who have not publicly aired their objections would interfere with a general expectation that the public can complain to the government in privacy and could subject those who filed complaints to retaliation and harassment.") (internal quotation marks and brackets omitted); *see also Wisdom*, 232 F. Supp. 3d at 125 ("[T]he exposure of this identifying information could subject the individuals involved to unnecessary public attention, harassment, or embarrassment and stymie the government's efforts to obtain candid information about the performance of its trustees from such parties in the future.") (citation and internal quotation marks omitted).

The materials on the record establish that the risk of harassment is present in this case.  The focus of the FOIA request, the lawsuit, and the opposition to the motion is learning the complainant's identity; plaintiff apparently wishes to expose the complainant because it believes it has been wronged by that party.  *See, e.g.*, Opp. at 8 ("the third-party complaint was filed by a competitor seeking to weaponize Defendant's investigatory functions to economically harm Plaintiff").  But advancing a personal vendetta is not a purpose FOIA was designed to serve.

The Court finds that the privacy interest is significant, the risk of harassment is real,[3] particularly in light of plaintiff's obvious indignation, and the asserted public interest is too speculative to overcome the privacy interest.

> **C. There are no segregable portions that can be disclosed without threatening to disclose the exempt material.**

---

[3]   Having determined that the risk of harassment is real, the Court also finds that the agency has sufficiently demonstrated a foreseeable harm under 5 U.S.C. § 552(a)(8)(A)(i)(I).

"In order to demonstrate that all reasonably segregable material has been released, the agency must provide a 'detailed justification' for its non-segregability," although "the agency is not required to provide so much detail that the exempt material would effectively be disclosed." *Johnson*, 310 F.3d at 776, citing *Mead Data Cent.*, 566 F.2d at 261. "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007), citing *Boyd v. Crim. Div. of DOJ*, 475 F.3d 381, 391 (D.C. Cir. 2007), and "[a] court may rely on government affidavits that show with reasonable specificity why documents withheld pursuant to a valid exemption cannot be further segregated." *Juarez v. DOJ*, 518 F.3d 54, 61 (D.C. Cir. 2008), citing *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996).

Defendant has submitted a declaration describing the documents in detail and explaining why there are no segregable portions. The declaration explains, in considerable detail, why the disclosure of any portion of the record would be directly contrary to the purpose of invoking Exemption 6 in this case, and it suffices to establish that the non-exempt portions of the record are inextricably intertwined with the exempt portions. *See Johnson*, 310 F.3d at 776, quoting *Armstrong*, 97 F.3d at 578–79 (inquiry is over when the Court is satisfied that agency submissions "are sufficient to fulfill the agency's obligation to show with 'reasonable specificity' why a document cannot be further segregated").

**II.   The agency declaration was properly submitted under seal and *ex parte*.**

Plaintiff also challenges the submission of the agency's declaration under seal and *ex parte*. *See* Opp. at 3–4, 7. Courts are permitted to review documents in this fashion under FOIA; the "use of such affidavits is at the discretion of the [district] court." *Lykins v. DOJ*, 725 F.2d 1455, 1465 (D.C. Cir. 1984) (citation omitted). While the D.C. Circuit has instructed that *in camera* filings

are at odds with the "strong presumption in favor of public access to judicial proceedings," *Johnson v. Greater Se. Cmty. Hosp. Corp.*, 951 F.2d 1268, 1277 (D.C. Cir. 1991), and they deprive the Court of the "benefit of criticism and illumination" that comes with the arguments of opposing counsel, *Phillippi v. CIA*, 546 F.2d 1009, 1013 (D.C. Cir. 1976) (citation omitted), courts in this district have found that "*in camera*, *ex parte* filings are at times necessary to permit the Court to perform its role of ensuring that the agency has appropriately invoked a FOIA exemption without requiring the agency publicly to disclose the very records or information it seeks to protect."  *Shapiro v. DOJ*, 239 F. Supp. 3d 100, 111 (D.D.C. 2017), citing *Barnard v. Dep't of Homeland Sec.*, 598 F. Supp. 2d 1, 16 (D.D.C. 2009).

This is one of the rare cases where the *ex parte* submission, with its detailed description of the nature of the withheld document and the reasons underlying the exemption, was necessary to preserve the privacy of the third party involved.  Therefore, the Court concludes in its discretion that, while *ex parte* submissions are generally disfavored, it is justified by the privacy interests implicated by this case.

## CONCLUSION

Upon review of the full record, the Court will **GRANT** defendant's motion for summary judgement and **DENY** plaintiff's motion for reconsideration.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  September 30, 2021